IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 20, 2008 Session

# CURTIS MORRIS
v.
# AMSOUTH BANK

**Appeal from the Circuit Court for Shelby County**
**No. CT-004203-04      Rita L. Stotts, Judge**

---

**No. W2007-01688-COA-R3-CV - Filed September 23, 2008**

---

This appeal involves forged endorsements on a check. The appellant had two checking accounts at the defendant bank. The appellant forged endorsements on a check, deposited the check into his account at the bank, and then removed the proceeds from his bank account. The bank later determined that the endorsements on the check were forged and debited the appellant's other account in the amount of the fraudulently endorsed check. The appellant filed a lawsuit against the bank, and the bank counterclaimed for the amount of the check on which the appellant forged the endorsements. The bank filed a motion for summary judgment and submitted a statement of undisputed material facts in support of the motion. The appellant did not respond to the bank's statement of undisputed material facts. The trial court granted summary judgment in favor of the bank, and the appellant appeals. We affirm and remand the case to the trial court for determination of damages against the appellant for a frivolous appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed;**
**Remanded for Determination of Damages for Frivolous Appeal**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which, ALAN E. HIGHERS, P.J., W.S., joined; W. FRANK CRAWFORD, J., did not participate.

Curtis Morris, Appellant *pro se*.

Jeremy G. Alpert, Memphis, Tennessee, for Appellee AmSouth Bank.

## OPINION

On approximately April 22, 2002, Lienica Morris executed a general power of attorney appointing her brother, Plaintiff/Appellant Curtis Morris ("Morris") as her attorney-in-fact. On June 7, 2002, Lienica Morris executed a second power of attorney, naming her father as her attorney-in-fact. On June 26, 2002, Lienica Morris revoked the power of attorney previously given to her brother, Morris; this revocation removed Morris as her attorney-in-fact for all purposes. There is no

dispute in the record that these powers of attorney, as well as the revocation of the power of attorney to Morris, were properly executed.

On July 2, 2002, Homecomings Financial wrote a check made payable to "Lienica Morris and C's Custom Painting and Remodeling" ("Check"). The amount of the Check was $15,920.00. Morris was not a payee on this Check, and by the time the Check was written, Morris' sister, Lienica Morris, had revoked his power of attorney. Nevertheless, on July 3, 2002, Morris deposited the Check into his business checking account at Defendant/Appellee AmSouth Bank ("AmSouth"). The endorsements on the back of the Check purported to be those of Lienica Morris and the owner of C's Custom Painting and Remodeling, Calvin Pulliam. There is nothing in the record to indicate that, at that time, Morris had any authority to endorse checks for either Lienica Morris or for C's Custom Painting and Remodeling.

In August 2002, Calvin Pulliam and Lienica Morris executed affidavits stating that the endorsements of their names on the Check were forged. This prompted an internal investigation by AmSouth Bank, which ultimately determined that Morris forged the endorsements on the back of the Check. Consequently, AmSouth debited Morris' business checking account for the amount of the check, $15,920.00, and returned the funds to Homecomings Financial.

In addition to his business checking account, Morris also maintained a personal checking account at AmSouth. It is undisputed that both the business account and the personal account are governed by a Customer Agreement for Depository Accounts ("Deposit Agreement"). As of June 16, 2006, Morris was overdrawn on his personal checking account in the amount of $270.15, and on his business checking account in the amount of $16,093.22, for a total overdraft of $16,363.37.

In January 2004, Morris filed a civil warrant in the Shelby County General Sessions Court against AmSouth. In July 2004, judgment was entered in favor of AmSouth, and Morris appealed to the Shelby County Circuit Court. Morris' appeal apparently remained pending in the Circuit Court.

In February 2006, AmSouth filed a counter-complaint in Circuit Court against Morris, asserting breach of contract, unjust enrichment, restitution, indemnity, and conversion. Apparently, Morris did not file a response to AmSouth's counter-complaint. In June 2006, AmSouth filed a motion for summary judgment on Morris' claims against AmSouth. AmSouth also filed a motion for default judgment or, in the alternative, for summary judgment, on AmSouth's counter-complaint against Morris. In October 2006, the trial court granted AmSouth's motion for summary judgment as to Morris' claims against AmSouth, granted AmSouth's motion for default judgment on AmSouth's counter-complaint, and entered final judgment against Morris.

In November 2006, Morris filed a motion with the trial court seeking relief from the order granting AmSouth's motions. The trial court held a hearing on Morris' request for relief, and entered an order on March 21, 2007. In the order, the trial court denied Morris relief as to the entry of summary judgment on his claims against AmSouth, but granted Morris' request for relief from the

default judgment on AmSouth's counter-complaint. However, because AmSouth's original motion also included an alternate motion for summary judgment on AmSouth's counter-complaint, the summary judgment motion was set for hearing. Following that hearing, on March 27, 2007, the trial court entered an order granting AmSouth's motion for summary judgment on AmSouth's counter-complaint and entering final judgment in the action against Morris, awarding compensatory damages of $16,363.37 and attorney's fees of $5,454.45, for a total award of $21,817.82. On April 20, 2007, Morris filed a motion to alter or amend the judgment, which was denied.

Morris now appeals. On appeal, he argues that the trial court erred in granting AmSouth's motion for summary judgment as to Morris' claims against AmSouth, and in granting AmSouth's motion for summary judgment as to AmSouth's counter-complaint against Morris.

We are cognizant of the fact that Morris is proceeding *pro se*. While a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, ***Hodges v. Tenn. Att'y Gen***., 43 S.W.3d 918, 920 (Tenn. Ct. App.2000) (citing ***Paehler v. Union Planters Nat'l Bank, Inc.***, 971 S.W.2d 393, 396 (Tenn. Ct. App.1997)), "[p]ro se litigants are not ... entitled to shift the burden of litigating their case to the courts." ***Whitaker v. Whirlpool Corp***., 32 S.W.3d 222, 227 (Tenn. Ct. App.2000) (citing ***Dozier v. Ford Motor Co.***, 702 F.2d 1189, 1194-95 (D.C. Cir.1983)). *Pro se* litigants must comply with the same substantive and procedural law to which parties represented by counsel must adhere. ***Hodges***, 43 S.W.3d at 920-21. In the instant appeal, AmSouth points out that, in his appellate brief, Morris failed to cite to the record as required under Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure. Despite Morris' failure to comply with the briefing requirements, given the fact that the record is minimal and in the interest of judicial economy and adjudicating the case on its merits, we will nonetheless address the issues raised.

Turning to those issues, we first note that a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. ***See*** Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. ***See Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. ***See id.*** In ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Id*. at 210-11 (citations omitted).

Under ***Byrd v. Hall***, if the movant does successfully negate a claimed basis for the suit, the non-movant may no longer simply rely upon the pleadings. ***Id.*** The non-moving party must then establish the existence of the essential elements of the claim. ***Id***. The burden of the non-moving party may be met by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party;
> (2) rehabilitating the evidence attacked by the moving party;
> (3) producing additional evidence establishing the existence of a genuine issue for trial; or
> (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

***Id***. at 215 n. 6.

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. ***See Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn.1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's ruling on a motion for summary judgment. ***See Bain***, 926 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is ***de novo*** on the record before this Court. ***See Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn.1997).

The appellate record includes no response by Morris to AmSouth's statement of undisputed material facts, which was filed in conjunction with its motion for summary judgment. Rules 56.03 and 56.04 of the Tennessee Rules of Civil Procedure require any party opposing a motion for summary judgment to respond to each fact set forth by the movant.[1]  Because Morris failed to

---

[1]Rule 56.03 states:

> **Specifying Material Facts.**
>
> In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the Tennessee Rules of Civil Procedure shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be supported by a specific citation to the record.
>
> Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment.

Tenn. R. Civ. P. 56.03 (2007).  Rule 56.04 states:

comply with this requirement, the trial court was entitled to assume that the facts set forth by AmSouth are correct and undisputed. This Court likewise finds, based on the record, that there are no disputed material facts in this case.[2]

From the appellate record before us, the undisputed facts are as follows. As of July 2, 2002, the day Morris deposited the Check, Lienica Morris had revoked the power of attorney that she had previously executed in favor of Morris. Furthermore, Morris had no authority to sign for C's Custom Painting. Both Lienica Morris and Calvin Pulliam executed affidavits of forged endorsement regarding the Check.

Moreover, both of Morris' checking accounts at AmSouth are governed by the Deposit Agreement, which is part of this record. The Deposit Agreement clearly states that AmSouth is entitled to disgorge the proceeds of the Check from Morris' account under the facts of this case:

> If anyone claims that a check deposited to your account or cashed by us for you bears an unauthorized, forged or improper endorsement, has been altered, or is not properly payable for any other reason, we [i.e. AmSouth] may charge the check to your account or to any account which you own individually or jointly with others. For accounts established in Tennessee, we may charge the check to any account which you own individually or jointly with others that may be accessed without further consent of any joint depositor(s). If we are notified that any check cashed for you or deposited to your account for collection is not properly payable, you agree that, without further notice to you, we may authorize the drawee bank to hold the check and try to obtain payment.

Moreover, the Tennessee Uniform Commercial Code grants AmSouth a statutory right to disgorge funds that have been obtained through mistake or fraud:

> (a) Except as provided in subsection (c), *if the drawee of a draft pays or accepts the draft and the drawee acted on the mistaken belief that* (i) payment of the draft had not been stopped pursuant to § 47-4-403 or (ii) *the signature of the drawer of the*

---

Subject to the moving party's compliance with Rule 56.03, the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Tenn. R. Civ. P. 56.04 (2007).

[2]In his appellate brief, Morris sets out numerous facts and proceedings that are not included in the appellate record before this Court. We are constrained to consider only facts and proceedings supported by the record before us. *See, e.g., Baldwin v. State*, 325 S.W.2d 244 (Tenn. 1959).

*draft was authorized, the drawee may recover the amount of the draft from the person to whom or for whose benefit payment was made or, in the case of acceptance, may revoke the acceptance.* Rights of the drawee under this subsection are not affected by failure of the drawee to exercise ordinary care in paying or accepting the draft.

Tenn. Code Ann. § 47-3-418 (2001) (emphasis added).

From the undisputed facts in the record, as set out above, Morris had no authority to endorse the Check. Because Morris had no legal rights to these funds, AmSouth had both a contractual right under the Deposit Agreement and a statutory right under the Tennessee Uniform Commercial Code to disgorge the proceeds of the Check from Morris' accounts. However, the record shows that Morris withdrew the proceeds of the Check from his account before AmSouth had performed its due diligence and exercised its rights to disgorge them. Because Morris was never entitled to these funds, he is responsible for repaying them to AmSouth. Consequently, the trial court did not err in dismissing Morris' claims and granting summary judgment in favor of AmSouth on its counter-complaint.

On appeal, AmSouth has asked for its costs and fees associated with this appeal on the grounds that Morris' appeal of the trial court's judgment is frivolous. An appeal may be deemed frivolous if it is devoid of merit or if it has no reasonable chance of success. ***Williams v. Williams***, No. W2007-00109-COA-R3-CV, 2008 WL 2901578 at *6 (Tenn. Ct. App. July 28, 2008). Tennessee Code Annotated § 27-1-122 outlines the damages the appellate court may award against a party who brings a frivolous appeal:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-222 (2000).

From our review of the record in this case, we must conclude that Morris had no reasonable chance of success in this appeal. At the trial level, he did not contest AmSouth's statement of undisputed material facts. Absent any disputed material facts, AmSouth's entitlement to the proceeds of the Check is clear under both the Deposit Agreement and the UCC. "Successful litigants should not have to bear the expense and vexation of groundless appeals." ***Davis v. Gulf Ins. Group***, 546 S.W.2d 508, 586 (Tenn. 1977). Accordingly, we find that this is a frivolous appeal, and that AmSouth is entitled to its costs and fees incurred as a result of the appeal. We remand the cause to the trial court for a determination by the trial court of damages to be assessed against Morris for this frivolous appeal.

The decision of the trial court is affirmed and the cause is remanded for further proceedings consistent with this Opinion. Costs of the appeal are assessed against the Appellant Curtis Morris, and his surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE